IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TK PRODUCTS, LLC**, an Oregon limited liability company,<br><br>            Plaintiff,<br><br>       v.<br><br>**ROBERT BUCKLEY**, an individual, **STEVE PALADINO**, an individual, **USSC HOLDINGS CORP.**, a Nevada corporation, and **MUSIC CITY FIRE COMPANY**, a Nevada corporation,<br><br>            Defendants. | Case No. 3:16-cv-803-SI<br><br>**OPINION AND ORDER** |

Brian D. Chenoweth, Sandra S. Gustitus, and Brooks M. Foster, CHENOWETH LAW GROUP, PC, 510 S.W. Fifth Avenue, Fifth Floor, Portland, OR 97204. Of Attorneys for Plaintiff TK Products, LLC.

Jason E. Hirshon and Daniel E. Lerner, SLINDE NELSON STANFORD, 111 S.W. Fifth Avenue, Suite 1940, Portland, OR 97204; Matthew D. Francis and Ryan J. Cudnik, BROWNSTEIN HYATT FARBER SCHRECK, LLP, 5371 Kietzke Lane, Reno, NV 89511. Of Attorneys for Defendants Robert Buckley, Steve Paladino, USSC Holdings Corp., and Music City Fire Company.

**Michael H. Simon, District Judge.**

Plaintiff TK Products, LLC ("TK") has sued Robert Buckley ("Buckley"), Steve Paladino

("Paladino"), USSC Holdings Corp. ("USSC"), and Music City Fire Company ("Music City")

PAGE 1 – OPINION AND ORDER

(collectively "Defendants"), alleging various Oregon tort claims arising from a business relationship. Defendants have filed a motion under Rules 12(b)(2), (3), and (6) of the Federal Rules of Civil Procedure. Among other things, Defendants move to dismiss for improper venue or alternatively to transfer venue pursuant to a forum selection clause, seeking an order requiring TK to litigate its claims in Nevada, rather than Oregon. For the following reasons, the Court grants Defendants' motion to transfer. The Court orders this action transferred to the United States District Court for the District of Nevada.

## STANDARDS

### A. Interpretation of a Forum Selection Clause

Federal law governs the interpretation of a forum selection clause in a diversity case. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). "Whenever possible, the plain language of the contract should be considered first." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous; it is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Id.*

The standard for determining whether a forum selection clause applies to a particular claim differs depending on the breadth of the forum selection clause. Narrow forum selection clauses include those applying to any dispute "arising hereunder" or "arising out of" an agreement, while broad clauses include those applying to "any dispute arising from or related to" an agreement. A narrow forum selection clause applies to a given claim when the claim "relates in some way to rights and duties enumerated in the . . . contract," meaning that "[t]he claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Manetti-Farrow*, 858 F.2d at 514; *see also Mediterranean Enters., Inc. v. Ssangyong*

PAGE 2 – OPINION AND ORDER

*Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (explaining that clauses containing the phrase "'arising hereunder' [are] intended to cover . . . only [disputes] relating to the interpretation and performance of the contract itself").

It is the burden of the party seeking enforcement of a forum selection clause to sufficiently demonstrate that a claim requires interpretation of the contract. *See Welenco, Inc. v. Corbell*, 2013 WL 5423100, at *7 (E.D. Cal. Sept. 26, 2013); *see also Sims v. Paramount Gold & Silver Corp.*, 2010 WL 5364783, at *7 (D. Ariz. Dec. 21, 2010) ("[A] defendant should not be able to defeat a plaintiff's otherwise legitimate choice of venue merely by alleging without specificity that the plaintiff's non-contractual claims require interpretation of the contract."). By contrast, a broad forum selection clause may apply regardless of whether the claim "require[s] that the contract at issue be interpreted." *Sun v. Kao*, 170 F. Supp. 3d 1321, 1324 (W.D. Wash. 2016).

In *Tracer Research Corp. v. National Environmental Services Co.*, a licensor sued a licensee, alleging that it provided the licensee with trade secrets and confidential information pursuant to a licensing agreement, and the licensee continued to use this information after the termination of the agreement.[1] 42 F.3d 1292, 1293 (9th Cir. 1994). The licensing agreement contained the following arbitration clause: "[i]n the event any controversy or claim arising out of this Agreement cannot be settled by the parties [], such controversy or claim shall be settled by arbitration." *Id.* at 1295 (alteration in original). The Ninth Circuit held that claims that the licensee misappropriated the licensor's trade secrets after the termination of the agreement did not arise from the agreement and were therefore beyond the scope of the arbitration clause. *Id.*

---

[1] Although *Tracer* involved the application of an arbitration clause, the same analysis applies to interpreting the scope of a forum selection clause. *See Manetti-Farrow*, 858 F.2d at 514 n.4.

B.  **Motions to Enforce a Forum Selection Clause**

"[A] forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of [28 U.S.C.] § 1406(a) or Rule 12(b)(3)." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, --- U.S. ---, 134 S. Ct. 568, 579 (2013). Accordingly, 28 U.S.C. § 1404(a) provides the proper mechanism for the enforcement of such a clause. *Atl. Marine*, 134 S. Ct. at 579.

On a motion to transfer venue under § 1404(a), a court may transfer any civil action "[f]or the convenience of the parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). The forum to which transfer of venue is sought must be a district court where the case "might have been brought." *Id*. Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted); *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

The ordinary analysis of a motion to transfer venue under § 1404(a) changes when the parties have formed a contract that includes a valid forum-selection clause. *Atl. Marine*, 134 S. Ct. at 581. A court must give a forum-selection clause "controlling weight in all but the most exceptional cases." *Id.* at 579 (internal citation and quotation marks omitted). The plaintiff bears the burden of showing the exceptional circumstances that make transfer inappropriate. *Id.* at 581. In evaluating whether the plaintiff has established that transfer is inappropriate, a court should refrain from "unnecessarily disrupt[ing] the parties' settled expectations" when the parties have agreed "in advance to litigate disputes in a particular forum." *Id.* at 583.

When considering a motion to enforce a forum selection clause, the trial court must draw all reasonable inferences in favor of the nonmoving party. *Holland Am. Line Inc. v. Wartsila N.*

PAGE 4 – OPINION AND ORDER

*Am., Inc.*, 485 F.3d 450, 455 (9th Cir. 2007). "[T]he pleadings need not be accepted as true, and the court may consider facts outside the pleadings." *Id.* (citing *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004)).

## BACKGROUND

Trent Farrer and Kurt Bauer are the members of TK, a limited liability company. ECF 1 ¶ 1. Farrer and Bauer assigned to TK their rights to the claims, products, and agreements at issue in this case. ECF 1 ¶ 3. Both USSC and Music City are Nevada corporations with their headquarters in Nevada. Buckley is president of USSC and a director of Music City. Paladino is vice-president of Music City. ECF 1 ¶ 7, 9.

In July 2014, Paladino contacted Farrer and Bauer on behalf of USSC in order to inquire about licensing their "Water Fire Pit" product.[2] ECF 1 ¶ 16. TK alleges that during their discussions Buckley and Paladino "gave written representations and assurances to Farrer and Bauer that they would not steal Farrer and Bauer's ideas." ECF 1 ¶ 20. TK asserts that these written representations are contained in an email sent on August 18, 2014. ECF 34 at 15. On September 22, 2014, Farrer and Bauer sent a draft patent application to USSC, Buckley, and Paladino. ECF 1 ¶ 22. In December 2014, Farrer and Bauer signed an agreement with USSC, licensing their Water Fire Pit and "Tiki Torch" products to USSC (the "Agreement"). ECF 1 ¶ 21, 23; ECF 32-1. In January 2015, the parties amended the Agreement to include Farrer and Bauer's "Fire Pit" product as well (the "Addendum").[3] ECF 1 ¶ 24; ECF 32-1 at 11.

---

[2] The Water Fire Pit is a "sound reactive fire product[] . . . combining open flames and circulating water." ECF 1 ¶ 14.

[3] Like the Water Fire Pit, the Tiki Torch and Fire Pit products are also "sound reactive fire products" that "are unique in that the flames react (increase or decrease) in response to music." ECF 1 ¶ 14.

PAGE 5 – OPINION AND ORDER

The Agreement grants to USSC "an exclusive license to manufacture, use, market, and sell [the products]." ECF 32-1 ¶ 2(a). It contains several clauses that are relevant to this dispute. TK argues that Section 16 is a forum selection clause, while Defendants argue that only Section 21(b) is such a clause. Section 16 states:

> **16) Mediation and Litigation.**
>
> If any dispute arises under this Agreement, the Parties will negotiate in good faith to settle such dispute. If the Parties cannot resolve such dispute themselves, then either Party shall submit the dispute to mediation by a mediator from the Judicial Arbitration and Mediation Service. Mediation shall be in the county in which the licensee registers headquarters. Nevada law will govern all adversary proceedings brought by one party against another. The prevailing Party shall be entitled to an award of fees and costs of mediation not to exceed $10,000. All other attorneys' fees and costs shall be paid by the Party retaining the attorney. *The Parties may litigate their differences in the county and state in which the licensee registers headquarters.* The prevailing Party shall be entitled to recovery of reasonable attorneys' fees and costs up to $50,000.

ECF 32-1 ¶ 16 (emphasis added). Section 21(b) states:

> **21) Jurisdiction.**
>
> . . .
>
> (b) *All disputes hereunder shall be resolved in the applicable state or federal courts of Nevada sitting in the county of licensee's county* [*sic*]. Parties consent to the jurisdiction of said courts, agree to accept service of process by mail, and waive any jurisdiction or venue defenses otherwise available.

ECF 32-1 ¶ 21(b) (emphasis added). Importantly, the two clauses differ in that the litigation clause, as distinct from the mediation clause, contained in Section 16 uses the permissive "may," while the dispute resolution clause contained in Section 21(b) uses the mandatory "shall." The Agreement also contains an integration clause:

> **26) Signatures, Entire Agreement.**

PAGE 6 – OPINION AND ORDER

> The terms and conditions herein constitute the entire Agreement between Licensor and Licensee and shall supersede all previous agreements, either oral or written, between the Licensor and Licensee hereto with respect to the subject matter hereof.

ECF 32-1 ¶ 26.

TK alleges that USSC breached the Agreement in June 2015 by refusing to continue working with Farrer and Bauer to manufacture and sell the products. ECF 1 ¶ 33. Specifically, TK alleges that Farrer and Bauer provided USSC, Buckley, and Paladino with all the information required to manufacture the Fire Pit and Tiki Torch products. ECF 1 ¶ 32. TK further alleges that Paladino and Buckley later "stole" those products and used them to create Music City on January 7, 2016, which currently advertises similar products for sale on its website. ECF 1 ¶ 34-36. Defendants respond that USSC properly terminated the Agreement because Farrer and Bauer did not have the patents they claimed to have and lacked the ability or intent to obtain those patents. ECF 21 at 16-17, 19-21.

TK alleges claims of misappropriation of trade secrets against all Defendants and claims of intentional interference with business relations and unjust enrichment against Paladino, Buckley, and Music City. All Defendants move to dismiss or alternatively to transfer venue.

## DISCUSSION

Defendants argue that the forum selection clause in Section 21(b) of the Agreement is both enforceable and applicable to TK's claims. TK concedes that the clause is enforceable, but contends that the clause in Section 16 is a forum selection clause and is the only such clause that applies to its claims. Even if the clause in Section 21(b) applied to its claims, TK argues, that clause does not apply to Buckley, Paladino, and Music City because they did not sign the

Agreement.[4] The Court holds that the forum selection clause in Section 21(b) applies to TK's claims of misappropriation of trade secrets and intentional interference with business relations and transfers all claims, including unjust enrichment, against all Defendants to the District of Nevada in the interest of judicial efficiency.

**A. Whether Section 16 Contains a Forum Selection Clause**

TK argues that Section 16 contains a forum selection clause that applies to its claims. If this clause applies, TK argues, the clause would not prevent litigation in Oregon because it only specifies that litigation "may" be brought in "the county and state in which the licensee registers headquarters," which is in Nevada.

The relevant clause in Section 16 applies to "differences" between the parties, while the clause in Section 21(b) is more limited and only applies to "disputes hereunder." TK argues that the clause in Section 21(b) only applies to contractual disputes, while the clause in Section 16 is broader and also applies to tort claims. According to TK, "[t]o read Section 21(b) to apply to [tort] claims would deprive Section 16 of all meaning." ECF 34 at 6. Because it has only brought tort claims, TK argues, only the clause in Section 16 applies.

Defendants respond that Section 16 focuses primarily on mediation procedures. The clause that TK labels a forum selection clause is only a recognition that the parties may still litigate their claims, if mediation is unsuccessful. The fact that the clause specifies that such litigation "may" be brought in Nevada does not mean that any dispute must be brought there. Defendants also argue that Section 21(b) does not apply only to contractual claims and thus may also apply to tort claims, while the clause in Section 16 does not expressly apply only to tort claims.

---

[4] TK does not argue that exceptional circumstances make transfer inappropriate. *See Atl. Marine*, 134 S. Ct. at 581.

The Court agrees with Defendants. Section 21 of the Agreement, under which Section 21(b) appears, is titled "Jurisdiction." "Jurisdiction" means "the legal power, right, or authority to hear and determine a cause." *Webster's Third New International Dictionary of the English Language Unabridged* 1227 (2002). By specifying that "[a]ll disputes hereunder shall be resolved in the applicable state or federal courts of Nevada," the parties have stated their intention regarding which courts have the power, right, or authority to interpret and apply the law to their disputes. Section 21(b) also specifies that the "[p]arties consent to the jurisdiction of said courts."

Section 16 of the Agreement is titled "Mediation and Litigation." Mediation and litigation are both methods for resolving disputes. The text of Section 16 focuses primarily on mediation procedures, and the clause at issue follows six sentences describing mediation procedures. This suggests that the parties intended the word "may" to refer to the possibility of litigation as an alternative to mediation, not the exclusive jurisdiction for any such litigation. In contrast to Section 21(b), Section 16 contains no clause discussing the consent of the parties to the jurisdiction of any court. These considerations support the conclusion that Section 16 does not contain a mandatory forum selection clause. Therefore, the Court looks to the mandatory forum selection clause in Section 21(b).

B. Application of the Forum Selection Clause to TK's Claims

   1. Misappropriation of Trade Secrets

Under Oregon law, as relevant to TK's claim, a plaintiff alleging misappropriation of trade secrets must plead and prove that the trade secrets were "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Or. Rev. Stat. 646.461(2)(d)(B); *cf.* Nev. Rev. Stat. 600A.030(2)(c)(2)(II) (stating the same requirement).

TK alleges that: (1) "Defendants knew and/or had reason to know [its trade secrets were] derived from or through USSC, who owed a duty to Farrer and Bauer to maintain their secrecy and limit their use," ECF 1 ¶ 43; (2) "Defendants had a duty to maintain the secrecy" of its trade secrets, ECF 1 ¶ 44; and (3) "Defendants disclosed or used Plaintiff's trade secrets without express or implied consent when Defendants, at the time of disclosure or use, knew or had reason to know that their knowledge of the trade secret was acquired in circumstances requiring confidentiality and maintenance of secrecy, or limits on use." ECF 1 ¶ 46. TK argues that the sources of USSC's duty to maintain the confidentiality of TK's trade secrets are "USSC, Paladino, and Buckley's promise that they would not steal [Farrer and Bauer's] ideas; the 'first-to-market' strategy; the parties' mutual interests; and the signed Agreement."[5] ECF 1 ¶ 27. TK clarifies that this promise occurred in an email that predates the Agreement and that TK can support its misappropriation of trade secrets claim without interpreting the Agreement. TK further argues that, as in *Tracer*, the misappropriation of trade secrets occurred after the termination of the Agreement.

Defendants respond that any duty on USSC to maintain the secrecy of TK's purported trade secrets must be found only in the Agreement itself. To the extent that the alleged duty arose during negotiations—such as from an email promising not to steal TK's purported trade secrets or from discussions of a "first-to-market strategy"—these representations predate the Agreement, requiring an interpretation of its integration clause.[6] *See Sun*, 170 F. Supp. 3d at 1324 n.1.

---

[5] TK offers to remove from its Complaint this reference to the Agreement. Removal of this reference, however, would not affect the Court's analysis.

[6] Defendants also argue that the Agreement does not bar them from developing other fire pit products, working with third parties, or competing against TK. This is not a defense to TK's misappropriation claim because TK can prove its claim regardless of whether the Agreement permits or disallows Defendants' alleged conduct. Moreover, TK has not brought a claim alleging breach of the Agreement.

PAGE 10 – OPINION AND ORDER

Defendants further argue that the parties' "mutual interests" are spelled out in the Agreement, which governed their business relationship. Moreover, Defendants assert that the Agreement defines the scope of what Defendants agreed to maintain confidential, explicitly including products based on certain technologies and excluding products based on other technologies. TK replies that the integration clause is only relevant in a contractual dispute in which one party seeks to exclude evidence of negotiations pursuant to the parol evidence rule. *See* Or. Rev. Stat. 41.740. Because it does not bring a contractual claim, TK argues, the integration clause is irrelevant.

The Court agrees with TK that a claim in which the misappropriation occurred after the termination of the Agreement does not necessarily require an interpretation of the Agreement. *See Tracer*, 42 F.3d at 1295. Nevertheless, the Court agrees with Defendants that the source of Defendants' duty to maintain the secrecy of TK's alleged trade secrets cannot be established—at least as alleged in the Complaint—without reference to the Agreement. TK alleges that one source of Defendants' duty to maintain the secrecy of TK's alleged trade secrets is the pre-Agreement relationship among Farrer, Bauer, Paladino, and Buckley. The integration clause, however, may clarify the extent of this duty because it purports to supersede, and thereby extinguish, any promises made during negotiations, including the promises that TK asserts Paladino and Buckley made in an email.[7] Because a factfinder cannot fully determine the applicability or not of any representations made during pre-Agreement negotiations without interpreting the integration clause in the Agreement, TK's misappropriation of trade secrets

---

[7] It may be correct that Defendants could seek to exclude evidence of pre-Agreement promises under the parol evidence rule in a breach of contract action, but the integration clause is relevant for a different reason in this case. The integration clause helps clarify the intent and understanding of Farrer, Bauer, Paladino, and Buckley during the negotiations that allegedly gave rise to the duty to maintain secrecy.

PAGE 11 – OPINION AND ORDER

claim requires an interpretation of the Agreement.[8] Therefore, the forum selection clause in

Section 21(b) applies to TK's claim of misappropriation of trade secrets.

---

[8] Defendants present additional arguments for why the Agreement must be interpreted:

First, Defendants argue that TK's numerous references to the Agreement in its Complaint belie TK's suggestion that it can support its claims without interpreting the Agreement. *See* ECF 1 ¶¶ 19-20, 21, 23-25, 27, 29, 33, 35, 38. The Court recognizes that the Complaint contains several references to the Agreement and Defendants' alleged breach of the Agreement, but TK does not rely on these references to prove its misappropriation claim. Mere references to the Agreement in the Complaint do not require an interpretation of the Agreement.

Second, Defendants argue that the Agreement requires interpretation because TK warranted in the Agreement that it had "all the necessary licenses, rights and authorizations to grant [USSC] the exclusive license to manufacture, use, market and sell the [products] . . . ." ECF 32-1 ¶ 2(d)(i). In order to prove its misappropriation claim, TK may have to show that it has all the necessary licenses, rights, and authorizations to the products, but whether TK made such a warranty in the Agreement does not bear on TK's claim. To determine whether TK has trade secrets, the factfinder will not need to determine what TK warranted about its intellectual property in the Agreement or what it meant by those warranties. This is in contrast to a case in which a licensee warrants to a licensor that the licensor has trade secrets and that the licensee will maintain the confidentiality of those trade secrets. In that case, to analyze a misappropriation claim, a court might need to consider the contours of the trade secrets expressly recognized by the licensee or the confidentiality agreement between the licensee and the licensor. Defendants here, however, made no such warranty in the Agreement. Nevertheless, for the reasons stated above, the Court finds that TK's misappropriation of trade secrets claim requires interpretation of the Agreement.

Finally, Defendants also attempt to frame their arguments as defenses. The Court notes that some district courts have found that "when a defendant will inevitably assert a contractual defense to a plaintiff's . . . claim, the forum selection clause is inextricably intertwined with the construction and enforcement of the parties' agreement and therefore applies." *Sun*, 170 F. Supp. 3d at 1324 n.1 (quotation marks omitted) (quoting *Arreguin v. Glob. Equity Lending, Inc.*, 2008 WL 4104340, at *4 (N.D. Cal. Sept. 2, 2008)) (noting that a defendant's "integration clause" and "parol evidence rule" defenses to "[p]laintiffs' claims that they reasonably relied on her pre-integration statements" would require an interpretation of the contract); *but see Kwiecinski v. Medi-Tech Int'l Corp.*, 2015 WL 3905224, at *3 (D. Or. June 25, 2015) (rejecting a defendant-employer's argument in a wrongful termination action that the employment contract would need to be interpreted to resolve the employer's defense that it terminated the plaintiff because the plaintiff violated the contract). The Court, however, need not reach this issue because, as discussed above, these contractual arguments are not defenses to TK's misappropriation claim.

PAGE 12 – OPINION AND ORDER

### 2. Intentional Interference with Business Relations

Under both Nevada and Oregon law, a plaintiff alleging intentional interference with business relations committed by a competitor must plead and prove improper means. *Custom Teleconnect, Inc. v. Int'l Tele-Services, Inc.*, 254 F. Supp. 2d 1173, 1181 (D. Nev. 2003); *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 209-10 (1978) (requiring improper means or improper motive). In support of its claim for intentional interference, TK alleges as Defendants' improper, or wrongful, means the following:

> Defendants' wrongful actions, including but not limited to: 1) lying about their intentions to steal the products; 2) *expressly or impliedly agreeing not to disclose confidential information*; and 3) stealing and using confidential information, interfered with Plaintiff's economic expectancy to manufacture and sell its products, and be "first-to-market" with its ideas and concepts.

ECF 1 ¶ 60 (emphasis added); *see also* ECF 1 ¶ 58 ("Defendants misrepresented to Farrer and Bauer that they did not intend to steal their ideas and/or that they agreed to keep their proprietary information confidential.").

Based on these allegations, the Court finds that analyzing TK's intentional interference claim requires an interpretation of the Agreement. TK alleges that Defendants made misrepresentations regarding their intention to keep certain information secret and not to steal that information. The only allegations in the Complaint of representations made by Defendants are the representations allegedly made by USSC in the Agreement or the representations allegedly made by Buckley and Paladino as part of the negotiations that resulted in the Agreement. TK's allegations of representations made in the Agreement will require an interpretation of the Agreement. Further, to the extent that TK relies on representations made during the negotiations that resulted in the Agreement, this would require an interpretation of the Agreement's integration clause to determine whether those earlier representations survive the

PAGE 13 – OPINION AND ORDER

parties' integrated Agreement. *Cf. Sun*, 170 F. Supp. 3d at 1324 n.1. Therefore, the forum selection clause in Section 21(b) applies to TK's claim of intentional interference with business relations.

### 3. Unjust Enrichment

TK alleges that "[b]ecause Paladino, Buckley, and Music City only derived the benefit [of TK's "trade secrets, concepts, and technology"] through improper means and theft of trade secret[s], it is inequitable for them to retain that benefit without paying value to [TK]." ECF 1 ¶ 64, 66. The Court cannot determine whether the alleged "improper means" in this claim refers to Defendants' alleged representations (which would require an interpretation of the Agreement), the alleged misappropriation of trade secrets (which also might require an interpretation of the integration clause of the Agreement, as discussed earlier), or another allegation. The Court, however, need not decide this question because it elects to transfer all claims in the interest of judicial efficiency, as discussed below.[9]

### C. Application of the Forum Selection Clause to Non-Signatories

Finally, TK argues that the mandatory forum selection clause is inapplicable to Buckley, Paladino, and Music City because they did not sign the Agreement.[10] Defendants respond that the Agreement incorporates the non-signatory defendants by reference. Defendants argue that the Agreement defines the "[l]icensee" as "[USSC Holdings Corp.], its affiliates, assigns and

---

[9] Defendants argue that TK does not have a claim for unjust enrichment because the parties entered into a valid agreement. *See DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1061 (D. Or. 2011) ("[W]here the parties have entered into an actual agreement, whether express or implied, a claim for unjust enrichment cannot lie."). The existence of a valid Agreement, however, may not be relevant to TK's claim that Defendants were unjustly enriched through the misappropriation of TK's trade secrets because TK alleges that there was no Agreement in effect when the alleged unjust enrichment occurred. ECF 1 ¶ 34.

[10] TK also reiterates its argument that its claims against these Defendants do not require an interpretation of the Agreement for the same reasons as stated above.

PAGE 14 – OPINION AND ORDER

successors in interest" and the "[l]icensor" as "[Farrer and Bauer], [their] affiliates, assigns and successors in interest." ECF 32-1 ¶ 1(e)-(f). Defendants also observe that when the alleged conduct of non-signatory defendants is "closely related to the contractual relationship," then a forum selection clause applies to claims against those non-signatories as well. *Manetti-Farrow*, 858 F.2d at 514 n.5.

The Court finds that Buckley and Paladino's alleged negotiation, performance, and breach of the Agreement on behalf of USSC were closely related to the contractual relationship between USSC and Farrer and Bauer. Accordingly, the forum selection clause also applies to Buckley and Paladino. Music City's relationship to the Agreement, however, is not as clear. Music City did not exist when the Agreement was signed and does not appear to be affiliated with any of the signatories. Nevertheless, the Court need not decide this issue, as discussed below.

### D.  Judicial Efficiency

After reaching the conclusion that the forum selection clause covers TK's claims of misappropriation of trade secrets and intentional interference with business relations, the Court is left with the decision of whether to allow the unjust enrichment claim to remain in this District or to transfer it to the District of Nevada, along with the misappropriation of trade secrets and intentional interference claims, including all claims against Music City. If the Court splits this case into two, then two factfinders will be required to make overlapping factual determinations, and parties and witnesses will be required to shuttle between two states. "For the convenience of parties and witnesses" and "in the interest of justice," the Court will transfer all claims against all Defendants to the District of Nevada. 28 U.S.C. § 1404; *see Bennett v. Hosting.com, Inc.*, 2008 WL 4951020, at *3-4 (N.D. Cal. Nov. 18, 2008) (granting a Rule 12(b)(3) motion to dismiss as to all claims, even though "[m]any of the claims . . . f[e]ll outside of the forum selection clause"

PAGE 15 – OPINION AND ORDER

because "it serve[d] the goal of judicial efficiency to have the tort claims tried in the same forum as the various contract claims"); *Storm v. Witt Biomedical Corp.*, 1996 WL 53624, at *5 (N.D. Cal. Jan. 23, 1996) (transferring a claim that did not fall under a forum selection clause along with eight others that did because "the plaintiff's choice of venue does not override concerns of judicial efficiency and resources").

## CONCLUSION

Defendants' Motion to Dismiss or Alternatively Transfer Venue (ECF 21) is GRANTED IN PART. Defendants' Motion to Dismiss is DENIED, and Defendants' Motion to Transfer Venue is GRANTED. The Clerk of the Court is directed to transfer this action to the United States District Court for the District of Nevada and to send a copy of this Opinion and Order to that court. The Clerk also shall advise the Clerk of the Court in the District of Nevada that the transferred action appears to be related to a case pending in the District of Nevada styled *USSC Holdings Corp., et al. v. TK Products, LLC, et al.*, Case No. 3:16-cv-00398-LRH-WGC (D. Nev.).

**IT IS SO ORDERED**.

DATED this 29th day of November, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge